Good morning, your honors, and may it please the court. My name is Mark Hebert, and I represent Mr. Louis Matthews. The government drafted an indictment to charge a different set of crimes than the ones that allegedly occurred and that they tried to prove. They charged a drug conspiracy in what their own case agent testified was a robbery-homicide. Now they're completely changing their theory of the case and introducing a new character. For the first time on the field, they're arguing, in effect, that you can uphold the conviction by substituting possession with intent to distribute, which in some cases can be proved by the amount of drugs or prior conduct, or conspiracy to possess with intent to distribute, which under this court's cases, Loveland and Lennox, cannot be proved by the amount of drugs. Actually, Hebert, can you lean a little closer to the microphone, because your sound is starting to fade out just a little bit. I'm sorry. Can you hear me better now? Better, thank you. They're trying to substitute possession for conspiracy with intent to possess and distribute, but under Loveland and Lennox, United Circuit cases, they cannot be proved by the amount of drugs, or course of conduct, or even knowledge that there might or will be any further distribution. It requires proof of actual intent, an agreement to further distribute the drugs issued by someone other than the two men. The agreement can be proved by circumstantial evidence. It doesn't have to be proved by somebody testifying, we had an actual agreement to distribute, right? That is correct, but here, there is nobody else to conspire with on that purpose. Well, but there's the defendant in Thomas. Yes, but there has to be an agreement by Thomas to further distribute the drugs. Well, there has to be an agreement, there has to be a tacit agreement that somebody is going to further distribute the drugs. It doesn't have to be Thomas, right? It could be Matthews. Well, no, Matthews has to conspire with somebody else. Yes, Matthew has to conspire with Thomas that someone is going to distribute. And there is no evidence with respect to Thomas that was the case. He said he was solely going to help with the robbery. But what is it that could be robbed? He testified they were going to rob them of the marijuana, right? But if he didn't know the amount, he didn't know the amount. Well, he may not have known the amount going in, but when they were both running away with giant garbage bags of marijuana, why isn't that part of the agreement process where they both shoot and kill somebody and then they're running away, two of them, with giant bags of marijuana that the jury could Why isn't that enough to allow the jury to conclude that there was an agreement that somebody was going to distribute this huge quantity of marijuana that they ended up stealing? First of all, Your Honor, Mr. Thomas did not grab a bag of marijuana. Only Mr. Matthews. Well, that's what Mr. Thomas said, but that's not what Mr. Warris said. Mr. Warris testified that Thomas was carrying the marijuana, right? He said that he saw people carrying marijuana. I don't remember the exact language, but that was as they were running away in the dark. Right. But he specifically said that one of the people carrying the bags was, in fact, Thomas. They grabbed the bags. They grabbed the marijuana. They ran out the front door. Question. And so are you saying that both Mr. Matthews and John Thomas ran out with the That is what Warris said. Well, it's not what Thomas said, but he's the one who supposedly was carrying it. Also, I don't think you can. You went into it agreeing to commit a robbery. Okay. I don't think that what Matthews does is they're running away after killing someone. It's a point at which they've made an agreement to do anything. What they're doing is they're to rob, but what did he anticipate robbing? It's not difficult for the jury to infer that Thomas figured he was going to get something out of this for himself. Actually, number one, there was he didn't testify to that. And Agent Narviello testified that he was not getting paid for his assistance in the robbery. You know, you can't infer from the amount of drugs in a conspiracy. You have to have an agreement. The amount of drugs under Lennox and Loveland is irrelevant. The force of conduct is irrelevant. There's got to be an agreement. And I would submit that you don't go into a robbery not knowing how many, you know, what quantity of drugs you're going to get. And as you're running away, see that you're, you know, the other guy is trying to take something. And he dropped it, by the way. All the marijuana was out. He dropped it because he dropped it in part because Juarez was shooting at him, right? That's right. That's right. So what do you explain is Mr. Thomas' motivation? He simply said that he, I think it was because of the. I'm not saying what he said. I'm asking what the jury could have inferred was his motivation. I think there was no evidence to support an inference that he was doing anything other than what he said he was doing. Helping his cousin get back at somebody. And why do you think there was no evidence? Why do you think that the jury is required to conclude that this guy is going into what could be a dangerous situation for the Yeah, well, what he said isn't determinative. The jury is allowed to say, you know, that's not how people behave. If he's going to do this, he probably figures he's going to get something out of it himself. Why couldn't a jury infer that? He said that he wasn't getting anything and the agent said that he wasn't getting paid. I mean, you know, the inference has to be reasonable. If he was going into it thinking he was going to help sell drugs or get paid, he would have testified to that. And not only he, but also the agent testified that he was getting nothing out of it other than helping his cousin. Well, counsel, I think it would be sufficient if there was an agreement that one of them was going to distribute the drugs they were going to steal, whether Matthews or Thomas. But on the point of even if it were required that Thomas, we're going to get something out of it, isn't the and I might be pronouncing this wrong, isn't the quiz text Q. U. E. Z. Senate 517. Couldn't that the jury reasonably infer that that meant that Thomas was expecting to get money out of this? Again, he was the testimony was that he wasn't getting money out of it. Yeah, the test. The testimony was that the quiz text was for some sort of helping a friend move, right? Helping a friend to get revenge on drug dealers. No, I'm sorry about about quiz that the text with quiz that the money he was talking about there was for moving or something. But but a jury could infer that while the robbery has just concluded or about to conclude that he's promising someone thousands of dollars, could jury could infer that he was about to get it from the from the potential sale of the marijuana, right? Once again, I understand what your honors are saying. I can only go by what the evidence says. And the evidence was directly under that. So I don't see how the jury could infer that he didn't even know how much marijuana was there. There might have been none. There might have been personal use. Now, I see there is no evidence to or here. I'm sorry. He did. There was evidence that Thomas knew that Matthews made his money from selling drugs, right? Again, under the Glenick and Loveland cases, that is not relevant. Well, but but but you're just you're just saying there's no evidence from which he could know what what the quantity is. Maybe it's going to be from personal use, but they're taking in two guns to rob the Mexicans who had put one over on Matthews. And they know they're going in there to rob them of marijuana with two guns. And they see the Mexicans bringing in garbage bags full of marijuana. And you're saying that the jury had to conclude that it was a part that they thought going in, it was a personal use amount that they couldn't conclude that what this robbery with the guns that ended up in somebody being dead was to make marijuana for distribution purposes for when one of the guys stealing it was somebody who made money selling drugs? I think that the conspiracy, if there was one, had to have been made before they went in there to rob the marijuana. And the evidence is that he didn't know how much it was. There's no evidence that he cared. Remember, I forget whether it's Glenick or Loveland. It says that the seller or the co-conspirator has to have some stake in the further distribution. There simply is no evidence of that on this record. Do you want to save the rest of your time, counsel? Sure. May it please the court, Camilla Tessier on behalf of the United States. I'd like to address a few points that opposing counsel has made in his testimony. One of the things that the court has pointed out is that all cases involving an alleged agreement only between a buyer and a seller. And as the Seventh Circuit pointed out in a few cases that this court has cited to you, those are LaChuca and Cologne, which we cited in our brief. There's a difference between a simple seller-buyer relationship and a relationship between a, quote, go-between facilitator, sales agent, and general helper. The concern when you have only a buyer-seller relationship is that you might conflate sale with conspiracy. And if you infer conspiracy from the distribution quantity alone, then you will in every sale of a distribution quantity of drugs becomes a conspiracy. But of course, those concerns don't arise in a case such as this where you have two co-conspirators on the same side of the transaction. Although counsel, part of what the government was arguing below was that some of the conspirators to distribute were the putative sellers, right? That's correct, Your Honor. I mean, why did the government charge it like that given the case on buyer-seller? And it would be a real stretch to find that the sellers were in a conspiracy to distribute by the buyer given our buyer-seller law. I mean, why did the government charge it like that and complicate this case like that? Well, Your Honor, I was involved in the charging decision, so I can't answer the question of why precisely it was charged that way. I do know that often the evidence doesn't come out at trial precisely the way the government anticipates it will. But this isn't a, the theory that there is a conspiracy between Matthews and Thomas to rob the drugs in order for it to be resold is not a new theory. We argued in rebuttal in particular in response to Mr. Matthews' argument that there were two separate conspiracies, a drug conspiracy of which Mr. Matthews was not a part and then a separate conspiracy to rob. We argued, and this is from cited in our brief and at 226 of the selected excerpts of record, quote, now when they show up, yes, they use their guns and they use the idea of a robbery, but they use it to procure to possess these drugs. And you heard that the amount of drugs is only consistent with distribution. That was always the intent and the agreement of everyone that was involved. That's how they were going to get the drugs to possess them and distribute them. And that is the theory upon, the easiest theory upon which this court can uphold the conviction. I'd also want to be clear about that. At least in your briefs to us, you no longer appear to be arguing to support the conviction based on conspiracy with Nunez and Juarez. Is that correct? I think that is much harder under this court's buyer-seller law and the required proof of interdependence. But I think it is relatively easy for this court to affirm based on the fact that there was clearly a conspiracy between Mr. Matthews and Mr. Thomas to rob the drugs for the evidence that was featured in the indictment. How can we be sure the jury didn't face its verdict on the conspiracy that you're no longer arguing for? I'm not sure that's a question that this court asks. The question that this court asks in a sufficiency challenge is, is there enough evidence to support one of the I understand that distinction. It's a legitimate one. But I am concerned about the effect on the subsequent issue. That is, the fight over the buyer-seller instruction seems to me to take more importance if there remains a possibility the jury may have convicted based on that front-end conspiracy, the Nunez conspiracy. And certainly that might make a court assessment of harmlessness more difficult. And the courts have said it is easier to make an assessment of harmlessness when you have a jury verdict form that requires that they specify on what grounds they are convicting. But you only have to get to harmlessness if you believe that there was an abuse of discretion here. This court grants substantial relationship. And so the only way that the jury could have convicted was on the buyer-seller relationship. And the court found that there was no abuse of discretion in light of the substantial latitude afforded to dish reports based on an instruction that said conspiracy is a form of criminal partnership and requires an agreement to commit another crime. Counsel, did anyone request a special verdict on who the conspirators were? Not that I'm aware of, Your Honor. No. I would note that the jury instruction in this case is actually easier for this court to affirm than the jury instruction in Moe. Because in addition to the language about conspiracy being a criminal partnership and a criminal partnership, the district court also gave a portion of the buyer-seller instruction that the defendant requested, saying that a sale of drugs alone is not sufficient to establish a conspiracy. And the defendant is not entitled That's not quite what the court said. The court said, and it's not enough that they discuss matters of common interest, acted in similar ways, sold drugs to other individuals. That's correct. And I apologize for paraphrasing, Your Honor. I would note that defense counsel expressly approved of that instruction. This is that SCR-212. And defense counsel says, Our proposed instruction said, Proof that a defendant sold drugs to other individuals does not prove the existence of a conspiracy. That was addressed on page 20. I am okay with that. Now, defense counsel had also requested a second part of the instruction. And I think it's helpful to compare the instructions that defense counsel requested with the language in Lennox that the defense counsel was clearly borrowing from. So, in Lennox, this court said, Proof that a defendant sold drugs to other individuals does not prove the existence of a conspiracy. Rather, conspiracy requires proof of an agreement to commit a crime other than the crime that consists of the sale itself. So, these two sentences are two sides of the same coin. They're two ways of explaining the same concept. And the district court gave the first way of explaining it, but didn't give the second way. And that is within the district court's discretion in formulating the jury instruction. I'd note that the second portion of that requested instruction was particularly unnecessary, given the instruction, again, approved in Moe, that a conspiracy is a form of criminal partnership and requires proof of an agreement to commit a crime. And I think all taken together, that more than amply satisfied or was clearly within the judge's discretion. I guess there is another subject I'd like to take up. I'd like you to focus on the argument made on behalf of the defendant that Thomas hadn't joined an agreement of the nature that was alleged and convicted. That is a conspiracy with intent to distribute. What evidence was there regarding Thomas' intent and motivation? Certainly, Your Honor. First, I'd like to note as to what we have to prove as to Mr. Thomas' intent. I think the Supreme Court's decision in Ocasio is very helpful on that score. Now, we cited that case for the proposition that the government does not have to prove that each co-conspirator intended to commit each element of the substantive offense. But just a few sentences down from that, the court gives as an example a drug trafficking conspiracy and says, quote, Here, I think it was sufficient to show that Mr. Thomas agreed to help Mr. Matthews rob the drugs so that they could be distributed by Mr. Matthews. And I think you can infer that from several pieces of evidence. First of all, of course, is the drug quantity. Now, as the defendant points out, Mr. Matthews testified that he did not know the precise quantity of drugs that would be sold at the time that he met with Matthews and HK on November 30th. He testified, for example, that when he was sitting outside the apartment waiting for the signal to go up, that he saw two Mexicans bringing large trash bags up to the apartment. And that's an SER-102. He additionally testified that when he was in the apartment, he saw the bags, that one was open, and that he saw the marijuana inside. So he certainly knew before he shot Madrigal-Ferreira that the amount of drugs was a very large amount that could not possibly be distributed in personal quantity. He was there before he knew that. How does that make him part of a conspiracy with intent to distribute, as distinguished from a conspiracy to help out his cousin doing whatever, possibly including robbery, but with a big question mark as to what it was that was going to be carried away and what it was that Thomas was going to get out of it? Well, he knew before even, earlier in the day, he knew that they were planning to steal drugs. He knew that Mr. Matthews made his money by stealing drugs and that he had purchased drugs from these individuals before. He also knew that it was a large quantity of drugs, or the jury could reasonably infer that he knew this, before he went up to the apartment, because he saw people bringing the trash bags up to the apartment before he went up. But also, it's not necessary that he knows every aspect of the conspiracy at the very inception of the conspiracy. Conspirators' knowledge can evolve over time, and certainly, even after seeing the amount of drugs involved, it was only after that that he shot Madrigal-Ferreira and ran off with the drugs. On that point, I also think it's helpful to note that the testimony was that both Matthews and Thomas ran off with the drugs. Now, Mr. Thomas himself testified that it was Matthews who grabbed the drugs and later robbed them. But two witnesses testified that Thomas was involved in grabbing the drugs. Mr. Juarez, who was inside the apartment during the shooting, said that they both grabbed the bags and ran. That's at SDR 36. And Mr. Nunez, who was in the bathroom during the shooting and came out afterwards onto the balcony and shot at Mr. Thomas and Matthews, he said, and this was at SDR 59 to 60 and 63, that Thomas was the one who dropped the big bag of marijuana. He said it had all been consolidated at some point. Thomas was the one who dropped it and ran. And that somebody tried to pick it up, but he couldn't tell if it was Matthews or Thomas. So that shows that it wasn't just that Matthews intended, cared about actually getting the drugs, but that Thomas cared about actually getting the drugs too. And then, of course, we have the further testimony from Mr. Thomas that Mr. Matthews was angry that he had left the drugs behind, which further confirmed that the goal here was not simply an act of revenge, but it was actually to get the marijuana. And the jury could rationally infer that the reason to get the marijuana was so that it could be used against him. If the court has no further questions, we'll rest on our brief. I see my time is almost up. Thank you. Thank you. I'm not aware of any authority to suggest that if something happens that's unexpected, that the agreement, which is made prior to the robbery, suddenly changes to something else. That doesn't seem to me to make any sense. They could have brought bars of gold, and Thomas wouldn't have known anything about it, and that doesn't change what he agreed to. And the second point I want to make is that the Moe case actually supports our position. And it says that the Moe person, the Moe defendant, was at fault. And it says, we emphasize that we do not hold as a matter of law that a specific buyer-seller instruction is never required when a jury is properly instructed on the elements of the conspiracy. In other circumstances, it may be required. For instance, if the defendant had been named as a defendant and charged both with the sale and distribution to Moe and with conspiracy to distribute downstream, such cases might present more substantial risk to the jury, staking a sale as a basis on which to find a conspiracy between a buyer and seller in the absence of more explicit instruction detailing the distinction. And in those circumstances, a buyer-seller instruction might be necessary. That is exactly what happened here. That is exactly what was requested and not given as an instruction. The defendant wanted it to be the conspiracy requires a proof of intent to commit a crime other than the crime that consists of the sale itself. I agree with Your Honor that there is no way to tell that they didn't, that the jury didn't convict based on the conspiracy with the sellers, which is absurd and which I think that they are dropping as they should. But again, I have to go with the evidence. And I don't think the fact that he found out when he got there that there was a larger amount of marijuana that he had been told, I don't think that changes what he agreed to. It's the agreement which is known. Are there any more questions? It doesn't appear that we do. Thank you very much to both sides for your argument today. The matter is submitted for decision by the court. Thank you. Thank you, counsel. The next two cases on the calendar have been submitted on the briefs and record. And for the record, U.S. v. Bruno and U.S. v. Thompson. I'm calling for argument Melnyk v. Berenda.
judges: Clifton, Nguyen, Bennett